1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10         SOUTHERN DISTRICT OF CALIFORNIA
11

DONALD PATTON,                          )   Case No: 14cv1489 AJB (WVG)
                                        )
              Plaintiff,                )
                                        )   ORDER GRANTING IN PART AND
v.                                      )   DENYING IN PART
                                        )   DEFENDANTS' MOTION TO
JALEH HANASSAB, an individual,          )   DISMISS
FIRST LIGHT PROPERTY                    )
MANAGEMENT, INC., a California          )   (Doc. No. 16)
Corporation, and DOES 1 through 20,     )
inclusive,                              )
                                        )
              Defendants.               )
                                        )

        Presently before the Court is Defendants Jaleh Hanassab and First Light Property

Management, Inc.'s (collectively "Defendants") motion to dismiss Plaintiff Donald

Patton's ("Plaintiff") first amended complaint.  (Doc. No. 16.)  For the reasons set forth

below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.     FACTUAL ALLEGATIONS[1]

        Plaintiff is a gay, Native American male, medically diagnosed with Schizophrenia

and Alcoholism.  (Doc. No. 15, ¶ 14.)  On or about October 25, 2007, Plaintiff applied

---

[1]  The facts set forth herein are taken from the first amended complaint, which the
Court accepts as true for the limited purpose of resolving this motion.  *See Parks School
of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

for and was approved as a candidate for a Section 8 Housing Program sponsored by the United States Department of Housing and Urban Development (HUD), San Diego Impact Program, and the San Diego Housing Commission (SDHC).  (*Id.* ¶ 14.)  On November 8, 2007, Plaintiff entered into a month-to-month rental agreement with Defendant Jaleh Hanassab ("Hanassab") to reside at an apartment (referred to hereafter as the "Property") owned by Hanassab.  (*Id.* ¶ 15.)  The Property consists of twenty-eight units, four of which are reserved for Section 8 housing.  (*Id.* ¶ 16.)  At the time Plaintiff moved to the Property, it was managed by Darleen and Lonnie Thomas.  (*Id.* ¶ 15.)  As part of the housing  program, Plaintiff is responsible for a portion of his monthly rent, while the remainder is paid by HUD, SDHC, and the San Diego Impact Program.  (*Id.* ¶ 14.)  On June 15, 2011, Plaintiff received notice that Defendant First Light Property Management ("First Light") would be the property managers and maintenance supervisors of the Property as of June 16, 2011.  (*Id.* ¶ 17.)

Plaintiff claims that in spring of 2012, he became the subject of discrimination while residing at the Property.  (*See id.*  ¶¶ 18-38.)  On one occasion, Plaintiff asked Lonnie Thomas ("Thomas") to move his tools so that Plaintiff could enter his apartment.  (*Id.* ¶ 18.)  Thomas responded with profanity in an intimidating voice, saying that Plaintiff should move out.  (*Id.*)  Plaintiff became fearful and hid out in his apartment in fear as a result of Thomas' comments.  (*Id.*)  On another occasion, Thomas shook his head in a disgusted manner and told Plaintiff "We don't want your kind here."  (*Id.* ¶ 19.)  On a different occasion, Thomas called Plaintiff a "troublemaker."  (*Id.* ¶ 20.)

On August 23, 2012, Thomas came to Plaintiff's apartment to conduct maintenance and served Plaintiff with a 60-Day Notice to Move Out.  (*Id.* ¶ 21.)  On the same date, Defendants served Plaintiff with a Notice to Vacate that ordered Plaintiff to move out of the Property by October 21, 2012.  (*Id.* ¶ 22.)  Pursuant to the policies of the Section 8 housing program Plaintiff participated in, a participating property owner may not terminate a tenancy unless there is material noncompliance with the lease, material failure to carry out obligations under any state landlord and tenant act, or other good

1    cause.  (*Id.* ¶ 23.)  The 60-Day Notice given to Plaintiff did not state a reason for

2    termination of the tenancy.  (*Id.*)

3          On October 5, 2012, Thomas intimidated and coerced Plaintiff in an attempt to get

4    Plaintiff to move out.  (*Id.* ¶ 24.)  Specifically, Thomas spoke to Plaintiff in a "low-toned

5    voice" and asked whether Plaintiff had found a place to move.  (*Id.*)  Thomas further

6    stated "you know you have until October 31 [2012]."  (*Id.*)  On October 29, 2012,

7    Plaintiff submitted his portion of November rent owed to Defendants.  (*Id.* ¶ 25.)

8    Plaintiff's rent check was accepted and processed, and nothing further came of the

9    August 23, 2012 Notice to Vacate.  (*Id.*)

10         In July 2013, Thomas and his employees renovated and performed repairs and

11    improvements to certain units at the Property, including units reserved for Section 8

12    tenants.  (*Id.* ¶ 26.)  No improvements were made to Plaintiff's unit during this time

13    period.  (*Id.*)  On September 11, 2013, Plaintiff received another 60-Day Notice to Move

14    Out which purported to end Plaintiff's tenancy on November 11, 2013.  (*Id.* ¶ 28.)  The

15    Notice was signed and delivered by Thomas and no reason was provided for the Notice

16    to Vacate.  (*Id.*)  On the same date, Plaintiff also received a 30-Day Notice to Change of

17    Terms of Rental Agreement and a Smoke-Free Addendum to the Rental Agreement.

18    (*Id.*)

19         On September 19, 2013, Plaintiff received an "Owner HAP Contract Termination

20    Notice" from SDHC indicating that SDHC was informed that Hanassab had given

21    Plaintiff notice to terminate the lease effective November 11, 2013.  (*Id.* ¶ 29.)  The

22    Notice from SDHC also informed Plaintiff that he was no longer eligible for the Rental

23    Assistance Program and that SDHC would terminate their contract with Plaintiff

24    effective November 11, 2013.  (*Id.*)

25         On November 11, 2013, Darleen, acting as co-manager of the Property, demanded

26    Plaintiff allow her into Plaintiff's unit to perform a "walk-out."  (*Id.* ¶ 30.)  Plaintiff

27    denied Darleen access to his unit, causing Thomas and Darleen to forcefully enter

28

                                              3

Plaintiff's unit. (*Id.*) After Darleen and Thomas left, Plaintiff found a Three-Day Notice to Cure Violation or Move Out Notice signed by Darleen. (*Id.*)

On November 28, 2013, Plaintiff submitted a rent check for December which was accepted and processed by First Light. (*Id.* ¶ 31.) Two days later, on November 30, 2013, Plaintiff received another 90-Day Notice of Termination of Tenancy along with correspondence regarding an unlawful detainer action from Hanassab's attorney. (*Id.* ¶ 32.) The Notice stated that Plaintiff's tenancy would be terminated on February 24, 2014, and further provided Hanassab was electing to opt out of the Section 8 Program. (*Id.*) Plaintiff alleges no other Section 8 tenants at the Property received notice that their tenancies would be terminated by Hanassab. (*Id.* ¶ 33.)

On December 30, 2013 and January 30, 2014, Plaintiff submitted rent checks which were accepted and processed by First Light. (*Id.* ¶¶ 34-35.) On February 25, 2014, Hanassab filed an unlawful detainer action against Plaintiff in San Diego Superior Court based on the November 30, 2013, 90-Day Notice of Termination of Tenancy. (*Id.* ¶ 37.) Plaintiff was the only Section 8 tenant that Hanassab filed an unlawful detainer action against. (*Id.* ¶ 33.) On March 28, 2014, the date the unlawful detainer trial was set to commence, Hanassab voluntarily dismissed the case. (*Id.* ¶ 38.) To-date Plaintiff continues to live at the Property under the Section 8 program with rental assistance from SDHC and the San Diego Impact Program. (*Id.* ¶ 39.) As a result of Defendants' harassment, Plaintiff has suffered severe emotional distress. (*Id.* ¶ 40.)

On June 18, 2014, proceeding pro se, Plaintiff filed an initial complaint against Defendants. (Doc. No. 1.) Thereafter, Plaintiff retained counsel and filed the first amended complaint (FAC) which sets forth five causes of action for violation of: (1) the Fair Housing Act, 42 U.S.C. § 3601 et seq.; (2) the Civil Rights Act, 42 U.S.C. § 1982; (3) the Fair Employment and Housing Act, Cal. Gov. Code § 12955; (4) the Unruh Act, Cal. Civ. Code § 51; and (5) Disability Discrimination, Cal. Civ. Code § 54.1. (Doc. No. 15.) On October 29, 2014, Defendants filed the instant motion to dismiss. Plaintiff filed

an opposition, (Doc. No. 19), and Defendants filed a reply in further support of their motion (Doc. No. 20).

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "A court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (internal citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

Defendants' motion to dismiss generally references each of Plaintiff's claims as requiring Plaintiff to allege (1) that he applied for and was qualified to rent certain property; (2) was rejected; and (3) that the property remained available thereafter. (Doc. No. 16-1, p. 11.) Defendants contend that because Plaintiff was not denied housing, he cannot state a claim for housing discrimination. (*Id.* at 12) Defendants also argue that

the FAC relies "solely on conclusion, innuendo, and speculation" to support Plaintiff's claims. (*Id.* at 13.)  Finally, Defendants argue Plaintiff's claims are untimely under the applicable statutes of limitation. (*Id.* at 16.)

As an initial matter, much of Defendants' motion is dedicated to explaining the conduct alleged in the FAC and challenging the truthfulness of Plaintiff's allegations. However, a Rule 12 motion to dismiss is not the appropriate means for a defendant to test the likelihood of success on the merits, the truth of a plaintiff's allegations, or the amount of evidentiary support for a plaintiff's claims. *See Parks School of Bus., Inc.*, 51 F.3d at 1484 (noting all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party); *Hous. Rights Ctr., Inc. v. Moskowitz*, No. CV042266, 2004 WL 3738293, at *5 (C.D. Cal. Sept. 20, 2004) (challenges to the truth of factual allegations or lack of evidentiary support are appropriately considered on a motion for summary judgment, not a motion to dismiss).  Accordingly, alternative explanations or justifications for the conduct alleged in the FAC are not relevant in determining whether Plaintiff has stated a claim for housing discrimination. *See, e.g.*, *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) (a court does not consider rebuttal evidence at the prima facie case stage in a housing discrimination claim).  Defendants' challenges to the veracity of the allegations in the FAC based on Plaintiff's disabilities and medical conditions are likewise inconsequential.  While rebuttal evidence may become relevant at later stages in the proceeding, that does not bring such arguments within the Court's purview in the context of a motion to dismiss.  As such, the Court will only consider whether Plaintiff has adequately pleaded each cause of action challenged by Defendants.

A.    The FHA, FEHA, and Unruh Act Claims

Plaintiff's first cause of action is for violation of the federal Fair Housing Act ("FHA").  Plaintiff alleges that by attempting to evict Plaintiff from the Property through discriminatory comments, denial of repairs and renovations, notices to vacate and the unlawful detainer action, Defendants discriminated against Plaintiff in the terms,

conditions or privileges in the rental of the Property.  (Doc. No. 15, ¶¶ 42, 43.)  Plaintiff

further alleges that the discrimination occurred as a result of Plaintiff's race, color, sex,

familial status, sexual orientation, national origin, disability and medical conditions.  (*Id.*

¶ 43.)  Plaintiff also brings claims for violation of California's Fair Employment and

Housing Act ("FEHA"), and the Unruh Act on the basis of the same allegations.  The

provisions of FEHA[2] and the Unruh Act[3] at issue "protect substantially the same rights as

the FHA, and are subject to the same analysis."  *See Cabrera v. Alvarez*, 977 F. Supp. 2d

969, 975 (N.D. Cal. 2013); *Walker v. City of Lakewood*, 272 F.3d 1114, 1131 n.8 (9th

Cir. 2001).

The FHA prohibits discrimination "against any person in the terms, conditions, or

privileges of sale or rental of a dwelling, or in the provision of services in connection

therewith, because or race, color, religion, sex, familial status, or national origin."  42

U.S.C. § 3604(b).  A claim for discrimination under the FHA can be established through

either a disparate impact or disparate treatment theory.  *Budnick v. Town of Carefree*,

518 F.3d 1109 (9th Cir. 2008); *Gamble v. City of Escondido*, 104 F.3d 300, 304-05 (9th

Cir. 1997).  To establish a prima facie case of disparate impact under the FHA, "a

plaintiff must show at least that the defendant's action had a discriminatory effect."

*Budnick*, 518 F.3d at 1118 (quoting *Pfaff v. U.S. Dep't of Hous. & Urban Dev.*, 88 F.3d

739, 745 (9th Cir. 1996)).  More specifically, a plaintiff must allege "(1) the occurrence

of certain outwardly neutral . . . practices, and (2) a significantly adverse or dispropor-

tionate impact on persons of a particular [type] produced by the [defendant's] facially

---

[2]  Government Code Section 12955 states that it is unlawful for "the owner of any housing accommodation to discriminate against or harass any person because of race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, or genetic information of that person."

[3]  The Unruh Civil Rights Act, as codified in California Civil Code Section 51, states: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

1    neutral acts or practices." *Comm. Concerning Cmty. Improvement v. City of Modesto*,

2    583 F.3d 690, 711 (9th Cir. 2009) (quoting *Pfaff*, 88 F.3d at 745); *see also Cabrera*, 977

3    F. Supp. 2d at 976; *Gamble*, 104 F. 3d at 306.  A plaintiff makes out a prima facie case

4    of disparate treatment merely by showing that a protected group has been subjected to

5    explicitly differential or discriminatory treatment.  *Cabrera*, 977 F. Supp. 2d at 976.

6    Discriminatory intent or motive is a necessary element of any disparate treatment claim

7    under the FHA.  *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012);

8    *Gamble*, 104 F.3d at 305.  As Plaintiff has not alleged the application of any particular

9    policy or practice resulting in an adverse effect to Plaintiff, the Court will consider

10   whether Plaintiff has adequately stated a claim under a disparate treatment theory.

11        Plaintiff alleges that Defendants issued multiple notices to vacate in an attempt to

12   evict Plaintiff from the Property, which culminated in the filing of the unlawful detainer

13   action.  Plaintiff claims the notices to vacate, tenancy termination notices, as well as

14   particular comments made by Defendants to Plaintiff, were intentional acts of discrimi-

15   nation as a result of Plaintiff's sexual orientation, national origin, and medical conditions

16   of Schizophrenia and Alcoholism.  The FHA expressly encompasses protections from

17   discrimination in housing on the basis of race, color, religion, sex, handicap, familial

18   status, or national origin.  Additionally, it is well-established that persons recovering

19   from drug and/or alcohol addiction are disabled under the FHA and therefore protected

20   from housing discrimination.  *See Pac. Shores Properties, LLC v. City of Newport*

21   *Beach*, 730 F.3d 1142, 1156-57 (9th Cir. 2013).  Plaintiff also alleges that he has

22   suffered injury as a result of Defendants' conduct because Plaintiff was subjected to the

23   potential loss of Section 8 housing, continual threat of eviction or lease termination, and

24   emotional distress stemming from these incidents.

25        Considering the allegations in the FAC in their entirety, and interpreting all

26   inferences in favor of Plaintiff, the Court concludes Plaintiff has alleged sufficient facts

27   to state a claim of disparate treatment under the FHA.  The fact Plaintiff was not actually

28   evicted from the Property does not preclude the FHA claim as Defendants contend.  *See*

1   *Comm. Concerning Cmty. Improvement*, 583 F.3d at 711-12 (concluding the FHA

2   includes claims arising after the acquisition of property); *Harris*, 183 F.3d at 1050

3   (plaintiff who claimed she was subject to eviction notices following her complaint of

4   race discrimination could state a claim under the FHA).  As discussed above, the

5   appropriate inquiry in reviewing the sufficiency of a complaint "is not whether a plaintiff

6   will ultimately prevail, but whether a claimant is entitled to offer evidence to support the

7   claims." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (internal

8   citations omitted).  Thus without reaching the merits of Plaintiff's claims, the Court

9   concludes the allegations in the first amended complaint are sufficiently pleaded.

10   Accordingly, the Court also concludes that Plaintiff has stated a claim for intentional

11   discrimination on the basis of national origin, sexuality, and medical condition with

12   respect to the FEHA and Unruh Act claims.  Thus, the Court **DENIES** Defendants'

13   motion to dismiss Plaintiff's first, third, and fourth causes of action under the FHA,

14   FEHA, and Unruh Act.[4]

15   B.    Civil Rights Claim

16        Plaintiff also brings a cause of action for violation of section 1982 of the Civil

17   Rights Act.  Defendants contend that Plaintiff cannot maintain his claim for violation of

18   section 1982 because Plaintiff was not denied housing and currently resides at the

19   Property.

20        Section 1982 protects the rights of all citizens to inherit, purchase, lease, sell, hold,

21   and convey property.  *See* 42 U.S.C. § 1982.  Section 1982 is properly invoked when

22   discrimination is alleged against "identifiable classes or persons" who are treated

23   differently "solely because of their ancestry or ethnic characteristics." *Shaare Tefila*

24   *Congregation v. Cobb*, 481 U.S. 615, 617 (1987).  A plaintiff can state a claim under

25

26        [4] Defendants note that the Unruh Act "aims to eliminate discriminatory practices in business establishments," (Doc. No. 16-1, p. 11 n.3), however, the law is well-

27   established that the Unruh Act includes acts of discrimination that occur in connection with residential housing. *See Marina Point v. Wolfson*, 30 Cal. 3d 721, 731 (1982) ("For nearly two decades the provisions of the Unruh Act, in light of its broad application to

28   'all business establishments,' has been held to apply with full force to the business of renting housing accommodations.").

9                                    14cv1489 AJB (WVG)

section 1982 by pleading the following elements: (1) plaintiff is a member of a racial minority; (2) plaintiff applied for and was qualified to rent or purchase the property in question; (3) defendant rejected plaintiff; and (4) the housing opportunity remained available thereafter.  *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 551 (9th Cir. 1980).

Plaintiff's opposition does not address Defendants' argument that Plaintiff must have been denied housing to maintain his section 1982 claim and instead focuses on the alleged attempts to evict Plaintiff from the property as the conduct violative of Plaintiff's rights.[5]  However, while the threat of eviction may be sufficient to state a claim under more broadly reaching housing statutes, it is insufficient under section 1982.  Plaintiff has failed to provide authority from which the Court can conclude he has adequately pleaded a violation of section 1982 of the Civil Rights Act, given that  Plaintiff obtained housing from Defendants and continues to reside at the property.  While Plaintiff's national origin may be sufficient to satisfy the first element—that Plaintiff is a member of a racial minority—the remaining elements are not alleged in the FAC.  Accordingly, Defendants' motion to dismiss Plaintiff's second cause of action for violation of section 1982 is **GRANTED** with leave to amend.

C.    <u>California Disabled Persons Act (Cal. Civil Code § 54.1)</u>

Plaintiff's final cause of action is for violation of the California Disabled Persons Act ("CDPA").  As noted above, Defendants' motion generally challenges all five claims in the FAC instead of addressing each claim individually.  As a result, Plaintiff argues Defendants' motion did not specifically address Plaintiff's CDPA claim, and that Defendant must be precluded from supplementing any additional arguments regarding this claim in their reply papers.  (Doc. No. 19, p. 12.)  Defendants' motion appears to challenge all five causes of action; the motion references each of Plaintiff's claims, albeit

---

[5] Plaintiff's opposition does address the fact that Plaintiff still resides at the property, but only with respect to the FHA claim.  (Doc. No. 19, p. 13.)

summarily, and challenges Plaintiff's medical conditions upon which the disability discrimination claim presumably rests.[6]  (*See, e.g.*, Doc. No. 16-1, ps. 11, 16.)

Under the CDPA individuals with disabilities "are entitled to have full and equal access, as other members of the general public, to accommodations . . . to which the general public is invited, subject only to the conditions and limitations established by law, or by state or federal regulation, and applicable alike to all persons."  Cal. Civ. Code § 54.1(a)(1).  The CDPA ensures that individuals with disabilities are granted or otherwise permitted to make reasonable accommodations to ensure full enjoyment of the premises.  *See id.*  The CDPA is intended to secure disabled persons the same right as the general public to "the full and free use of facilities open to the public.  Its focus is upon *physical* access to public places."  *Fetter v. Bonner*, No. 2:12-CV-02235, 2014 WL 654575, at *6 (E.D. Cal. Feb. 19, 2014) (emphasis in original); *see also Turner v. Ass'n of Am. Med. Colleges*, 167 Cal. App. 4th 1401, 1412 (2008).  As such, CDPA claims are often associated with the denial of reasonable accommodations and claims arising under the Americans with Disabilities Act.

In connection with the CDPA claim, Plaintiff alleges that Defendants knew Plaintiff was diagnosed with Schizophrenia and Alcoholism, refused to lease, and attempted to evict Plaintiff from the Property.  It is unclear however, how Plaintiff was denied reasonable accommodations or full and equal access to the Property.  Plaintiff does not allege any barriers to the Property, or identify any accommodation that was necessary, requested, or denied.  Even giving Plaintiff's allegations the broadest reading possible, Plaintiff has not pleaded any denial of physical access to the Property.  While Plaintiff may have identified interference with his right to the Property by way of the notices to vacate and attempted eviction, Plaintiff has not alleged a denial of physical access to the Property or any facility open to the public.  Given the uncertainties remaining after consideration of the FAC allegations, Plaintiff has failed to state a claim

---

[6] The FAC does not allege that Plaintiff suffers from any other disability such as a physical impairment.

1   under the CDPA.  Thus, Defendants' motion to dismiss the CDPA claim is **GRANTED**

2   with leave to amend.

3   D.   Statute of Limitations

4        Finally, Defendants' motion asserts that each of Plaintiff's claims should be

5   dismissed as untimely.  (Doc. No. 16-1, p. 16.)  The parties agree that the stated or

6   otherwise applicable statute of limitations for each cause of action is two years.[7]  (Doc.

7   No. 16-1, p. 17; Doc. No. 19, p. 15.)  The parties do, however, dispute whether Plaintiff

8   has adequately alleged a continuing violation of the housing discrimination claims, or

9   alleged only a series of discrete acts, some of which fall outside of the limitations period.

10  Specifically, Defendants argue that Plaintiff's failure to plead specific dates with respect

11  to three comments allegedly made to Plaintiff by Thomas in spring of 2012 is fatal to

12  each cause of action.  (Doc. No. 16-1, p. 17.)  Defendants argue that these three com-

13  ments fall outside of the two year limitations periods, given that Plaintiff initially filed

14  suit on June 18, 2014.  Defendants conclude that because each of Plaintiff's claims relies

15  on time-barred evidence, the FAC must be dismissed.  Plaintiff argues that the FAC

16  adequately alleges a continuing violation that amounts to a pattern and practice of

17  discrimination.  (Doc. No. 19, p. 15.)

18       Under the continuing violation doctrine, when a plaintiff, pursuant to the Fair

19  Housing Act, "challenges not just one incident of conduct violative of the Act, but an

20  unlawful practice that continues into the limitations period, the complaint is timely when

21  _____

22       [7] The FHA and FEHA have two-year limitation periods.  *See* 42 U.S.C. §
    3613(a)(1)(A); Cal. Gov. Code § 12989.1.  The Civil Rights Act does not contain a
23  statute of limitations, and thus courts commonly apply the most analogous limitation
    period provided for by state law.  *See Donoghue v. County of Orange*, 848 F.2d 926, 930
24  (9th Cir. 1987) (applying California's two-year personal injury statute in the absence of a
    federal statute of limitations for claims arising under the Civil Rights Act).  Similarly,
25  courts commonly apply California's two-year personal injury limitation period to Unruh
    Act and CDPA claims as those causes of action also do not contain an express statute of
26  limitations.  *See Hernandez v. Sutter W. Capital*, C09-03658, 2010 WL 3385046 at *2
    (N.D. Cal. Aug. 26, 2010) (discussing determination of limitations period applied to
27  claims for violation of the Unruh Act); *Indep. Hous. Servs. of San Francisco v. Fillmore
    Ctr. Assoc.*, 840 F. Supp. 1328, 1345 (N.D. Cal. 1993) (noting that the most analogous
28  statute of limitations for CDPA claims is California's personal injury statute which has a
    two-year limitations period).

it is filed" within two years of "the last asserted occurrence of that practice." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982).  Congress codified the continuing violation doctrine articulated in *Havens* and amended the FHA to include both the occurrence and the termination of an alleged discriminatory housing practice as events triggering the two-year statute of limitations. *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008) (en banc).   The FEHA also has a two-year limitations periods which begins to run upon the termination of the alleged discriminatory conduct. *See* Cal. Gov. Code § 12989.1 ("An aggrieved person may commence a civil action in an appropriate court not later than two years after the occurrence or the termination of an alleged discriminatory housing practice . . .").  Plaintiff cites to California Code of Civil Procedure Section 335.1 for the proposition that the same two-year statute of limitations is applicable to violations of the Unruh Act.  (Doc. No. 19, p. 15.)

It appears Plaintiff conflates the continuing violation doctrine as codified in the FHA and FEHA statutes with the two-year limitations period applicable to those causes of action.  Section 335.1 of the California Code of Civil Procedure sets forth the two-year limitations period applicable to personal injury actions, which is employed as the limitations period in Unruh Act claims.  Section 335.1 does not state that a cause of action accrues upon termination of the discriminatory conduct.  To the contrary, under California law, a cause of action accrues when, under the substantive law, the wrongful act is done, or the wrongful result occurs. *See Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999).  Thus, Section 335.1 does not support the proposition that Plaintiff's Unruh Act claim began to run when the discriminatory conduct ceased.

However, Defendants' sweeping conclusion that because each of Plaintiff's claims rely in part on the spring 2012 comments, "the FAC must be dismissed" is without legal support.  Plaintiff's claims are not based solely on the spring 2012 comments.  Instead, the FAC details a series of discriminatory conduct alleged to have occurred over a two year period, all of which Plaintiff claims was intended to wrongfully evict Plaintiff from the Property.  Thus, Plaintiff's FHA and FEHA claims are timely. *See Garcia*, 526 F.3d

at 462 (a complaint is timely when "based not solely on isolated incidents . . . but a continuing violation manifested in a *number of incidents*—including at least one . . . that [wa]s asserted to have occurred within the [limitations] period") (emphasis in original).

Similarly, the Court declines to dismiss the Unruh Act claim because Plaintiff has adequately pleaded a violation, even absent the comments allegedly made in spring of 2012.  Plaintiff's alleged injury was the wrongful attempts to evict Plaintiff, which culminated in the unlawful detainer action in March 2014.  To the extent Plaintiff's Unruh Act claim is predicated on the unlawful detainer action, the Court finds Plaintiff's claim for violation of the Unruh Act timely.  Thus, at this stage in the proceeding, the Court is not inclined to dismiss any cause of action on statute of limitations grounds. However, should Plaintiff choose to amend his complaint with respect to the section 1982 and the CDPA claims, Plaintiff should be cognizant of ensuring the allegations supporting those causes of action occur within the appropriate limitations period(s).

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss as to the FHA, FEHA, and Unruh Act claims and **GRANTS** Defendants motion to dismiss Plaintiff's causes of action under section 1982 of the Civil Rights Act and the CDPA with leave to amend.  Plaintiff must file a second amended complaint within fourteen (14) days of the date of this order.

**IT IS SO ORDERED**.


DATED:  February 12, 2015

_____
Hon. Anthony J. Battaglia
U.S. District Judge