UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DONALD PATTON,

                              Plaintiff,

v.

JALEH HANASSAB, an individual,
FIRST LIGHT PROPERTY
MANAGEMENT, INC., a California
Corporation,

                              Defendants.

Case No.:  14cv1489 AJB (WVG)

**ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

**(Doc. No. 38)**

## I.    INTRODUCTION

The Fair Housing Act was enacted to "eradicate discriminatory practices within a division of the United States economy." *Texas Dept. of Housing and Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2511 (2015). The Fair Housing Act incorporates the ideology and practices of many California statutes, including the Fair Employment and Housing Act as well as the Unruh Act. *Cabrera v. Alvarez*, 977 F. Supp. 2d 969, 975 (N.D. Cal. 2013). Each statute provides broad protection against arbitrary discrimination based on race, color, religion, sex, familial status, or national origin. *See* 42 U.S.C. § 3604(b).

1

Plaintiff Donald Patton ("Plaintiff") asserts claims for housing discrimination under the Fair Housing Act, Fair Employment and Housing Act, and the Unruh Act. Defendants Jaleh Hanassab and First Light Property Management (referred to collectively as "Defendants") have moved for summary judgment or alternatively, for partial summary judgment. (Doc. No. 15.) Plaintiff filed an opposition, (Doc. No. 43), and Defendants filed a reply brief, (Doc. No. 44). For the reasons detailed below, Plaintiff's claims for housing discrimination survive summary judgment, as several disputed issues of material fact remain. Accordingly, Defendants' motion is **DENIED**.

## II.   BACKGROUND

Plaintiff Donald Patton is a Native American member of the Olgala Sioux tribe. (Doc. No. 43-1 ¶ 1.) Plaintiff describes himself as having darker skin tone than that of Caucasians and facial features characteristic of his ethnicity. (*Id.*) Plaintiff is also a recovering alcoholic, and has not consumed alcohol or non-prescription drugs since December 2005. (*Id.*) In 2004, Plaintiff was diagnosed with schizophrenia, schizoaffective disorder. (*Id.* ¶ 2.) Plaintiff is a client of the Downtown Intensive Mobile Psychosocial Assertive Community Treatment ("IMPACT") program, which provides case management services for homeless adults in the Downtown area of San Diego County. (*Id.*) Specifically, the IMPACT program works with clients diagnosed with serious mental illnesses, as well as individuals with co-occurring mental health and substance disorders. (*Id.*)

In October 2007, Plaintiff applied for and was approved as a candidate for Section 8 housing, sponsored by the United States Department of Housing and Urban Development ("HUD"), the San Diego IMPACT Program, and the San Diego Housing Commission. (Doc. No. 15 ¶ 14.) Shortly thereafter, and with the assistance of the IMPACT program, Plaintiff entered into a lease with Defendant Jaleh Hanassab ("Hanassab"), to reside at 1440 Lincoln Avenue, Apartment 10 in San Diego (the "Property"). (Doc. No. 43-3 at 92–100.) In connection with the rental agreement, Plaintiff also signed a drug free agreement, (Doc. No. 43-3 at 101), complex rules, (Doc. No. 43-3

at 102–106), and a crime free lease addendum, (Doc. No. 43-3 at 107). Additionally, because Plaintiff was a member of the IMPACT program, an addendum was included specific to Plaintiff's receipt of Section 8 housing. (Doc. No. 43-3 at 96.)

As a member of the IMPACT Program, Plaintiff was only responsible for a small portion of his monthly rent, with the rest paid by HUD, SDHC, and the IMPACT Program. (Doc. No. 15 ¶ 14); (*see also* Doc. No. 43-3 at 119–121.) Plaintiff's lease was renewed on several instances, and a new addendum related to Plaintiff's Section 8 housing voucher was executed in connection with each lease renewal. (*See, e.g.*, Doc. No, 38-3 at 32–35); (Doc. No. 43-3 at 124–127.)

At the time Plaintiff entered into the original lease with Defendant Hanassab, the Property was under the management of Noble & Noble Property Management. (*See* Doc. No. 43-3 at 102.) On June 15, 2011, Plaintiff received notice that Defendant First Light Property Management ("First Light") would thereafter manage the Property. (Doc. No. 43-3 ¶ 8.) Two individuals, Lonnie and Darlene Thomas (referred to as "Mr. Thomas" and "Mrs. Thomas" respectively) worked as independent contractors of First Light, and performed maintenance and management duties on behalf of First Light beginning in June 2011. (Doc. No. 43-3 at 83.)

For the first several years, Plaintiff resided at the Property without issue. Plaintiff alleges, however, that he became the subject of discrimination in late 2011, by Mr. and Mrs. Thomas. The alleged discrimination began in September 2011, when Mr. Thomas inquired as to Plaintiff's ethnicity. (Doc. No. 38-3 at 50–51; Doc. No 43-1 ¶ 8.) When Plaintiff responded that he was Native American, Mr. Thomas stated, "I'd hate to see you with your war paint on." (Doc. No. 38-3 at 51.)

Plaintiff also asserts that in April 2012, Mr. Thomas approached Plaintiff and told him through profanity to "move out." (Doc. No. 43-1 at 4.) Then, in May 2012, Plaintiff contends that Mr. Thomas told Plaintiff, "We don't want your kind here." (Doc. No. 38-3 at 63.) Shortly after, in July 2012, Plaintiff claims that Mr. Thomas "gestured to Plaintiff with a limp wrist and in a mock, effeminate manner said, 'Honey are you home?'" (Doc.

No. 38-3 at 52–53.) Plaintiff asserts this statement was directed at Plaintiff's sexuality. (*Id.*)

Beginning in August 2012, Plaintiff alleges he was served with a series of improper and unlawful notices to vacate. Plaintiff received the first such notice on August 23, 2012, from Mr. Thomas. (Doc. No. 43-3 at 122.) The notice did not state a reason for its issuance, and Plaintiff was not informed why he received the notice. (*Id.*) Plaintiff also alleges that throughout 2013, other tenants in the complex received improvements that Plaintiff's unit did not receive.

Nearly a year later, on September 11, 2013, Mr. Thomas served Plaintiff with another 60-day notice to move out, which did not state a reason why the notice was issued. (Doc. No. 43-3 at 130.) That same day, Mr. Thomas allegedly told Plaintiff, "And this time they want you out!" (Doc. No. 38-3 at 65.) At the end of the 60-day period, Mrs. Thomas allegedly demanded entrance into Plaintiff's apartment to conduct a "walkout" inspection. (Doc. No. 43-1 at 6.) When Plaintiff declined to let her in, Mrs. Thomas forced her way into the unit, along with Mr. Thomas, who yelled for Plaintiff to open the door. (*Id.*) Mr. and Mrs. Thomas then posted a 3-day notice to cure violation or move out because Plaintiff refused to vacate the Property. (Doc. No. 43-3 at 132.)

In November 2013, Plaintiff received a 90-day notice of termination of tenancy, stating that Ms. Hanassab was opting out of the Section 8 housing program. (*Id.* at 134.) On December 12, 2013, however, Plaintiff's yearly addendum with Ms. Hanassab and SDHC was renewed. (*Id.* at 136–138.) Plaintiff remained at the Property and no further action was taken until February of the following year. On February 26, 2014, Ms. Hanassab filed an unlawful detainer action against Plaintiff. (*Id.* at 140.) In response, Plaintiff subpoenaed other Section 8 tenants that resided at the Property, with the intention of having them testify that they had not been asked to vacate the Property. (Doc. No. 43-1 at 7.) On the date of trial, two other Section 8 tenants appeared to testify on Plaintiff's behalf. (*Id.*) Prior to the trial beginning, Defendants voluntarily dismissed the proceeding. (*Id.*)

Plaintiff initiated this action against Defendants on June 18, 2014, approximately four months after the unlawful detainer.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment permits a court to enter judgment on factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 319, 327 (1986). Granting summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "If under any reasonable construction of the evidence and any acceptable theory of law, one would be entitled to prevail, the summary judgment against him cannot be sustained." *Garter–Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 980 (9th Cir. 1980).

### IV.   DISCUSSION

#### A.   Evidentiary Objections

In resolving a motion for summary judgment, a court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Admissibility at trial "depends not on the evidence's form, but on its content." *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. 317, 324). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible. . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010).

In connection with his opposition, Plaintiff filed objections to the material cited in Defendants' motion for summary judgment. (Doc. No. 43-3.) In reply, Defendants urge the Court to disregard Plaintiff's objections pursuant to this Court's Civil Case Procedures. (Doc. No. 44 ¶ 1, n.1.) Defendants set forth their own set of evidentiary objections to the material included in Plaintiff's opposition within their reply. (*Id.* at 1–4.)

Upon review of the cited materials at issue, the Court finds many of the parties' objections unnecessary and or duplicative. For example, all but one of Plaintiff's objections are to portions of Defendants' memorandum in support of summary judgment. From its thorough review of the record, the Court can readily ascertain whether the cited portions are supported by the record or relevant to the Court's summary judgment analysis. *See Becker v. Wells Fargo Bank NA, Inc.*, No. 10–2799, 2014 WL 3891933, at *2 (E.D. Cal. Aug. 7, 2014) ("Defendant's evidentiary objections to [plaintiff's] separate statements of . . . disputed facts are not considered because such objections should be directed at the evidence supporting those statements rather than the statements themselves.").

Thus, Plaintiff's relevance and "no supporting evidence" objections are unnecessary as the Court cannot rely on irrelevant facts in its summary judgment analysis. *See Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006). Both parties' objections in this regard are overruled. To the extent the parties' dispute the existence of particular facts cited in the briefing, the Court need not resolve such disputes in the context of this motion. Indeed, summary judgment is only appropriate when no such disputes exist.

Objections challenging the authenticity of a document, however, are more appropriate in the summary judgment context as a court may only consider admissible evidence, and authentication is a condition precedent to admissibility. *See* Fed. R. Civ. P. 56; *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Both parties dispute the authenticity of the Section 8 housing lease addendum signed as part of Plaintiff's initial and subsequent lease renewals. In its motion and reply, Defendants

contend the addendum is comprised of only two pages and that as part of Plaintiff's participation in the Section 8 housing program, Plaintiff waived any right to notice regarding the termination of his tenancy. (Doc. Nos. 38-1 at 8; 38-3 at 32–33, 34–35.) Plaintiff contends the lease addendum is comprised of three pages, with the third page including a provision voiding any waiver of notice regarding a termination of Plaintiff's tenancy. (Doc. No. 43 at 17); (*see also* Doc. No. 43-4.) Plaintiff and Defendants assert their respective versions of the Section 8 leasing addendum are accurate and authenticate each through a declaration of counsel.

Defendants' contention regarding the authenticity of the two-page addendum does not withstand comparison of the conflicting versions. Defendants suggest the housing addendum provides as follows:

> The Owner shall provide maintenance and services as follows:
> 1.    The Owner shall maintain the dwelling unit, equipment, common areas and facilities provided for the use and benefit of the Family in compliance with applicable Housing Quality Standards.
> **4.    Waiver of Legal Notice.** Agreement by the Family that the Owner need not give any notices in connection with (I) a lawsuit against the Family for eviction, money damages, or other purpose, or (II) any other action affecting the Family's rights under the Lease.

(Doc. No. 38-3 at 34–35) (bold in original). Plaintiff's version of the addendum reads in relevant part:

> **Lease Provisions.** Notwithstanding anything to the contrary contained in the Lease, any provision, term, condition, covenant or agreement of the Lease which falls within the classifications below, shall be void and unenforceable against the Tenant. The prohibited provisions include the following:
> **1.    Confession of Judgment.** Consent by the Family to be sued, to admit guilt, or to accept with question any judgment favoring the Owner in a lawsuit brought in connection with the Lease.

**2.      Seize or Hold Property for Rent or Other Charges.** Authorization to the Owner to take property of the Family and/or hold it until the Family meets any obligation which the Owner has determined the Family has failed to perform.

**3.      Exculpatory Clause.** Prior agreement by the Family not to hold the Owner or its agents legally responsible for acts done improperly or for failure to act when it was required to do so.

**4.      Waiver of Legal Notice**. Agreement by the Family that the Owner need not give any notices in connection with (I) a lawsuit against the Family for eviction, money damages, or other purpose, or (II) any other action affecting the Family's rights under the Lease. (Doc. No. 43-3 at 136–139) (bold in original).

Defendants' version of the addendum include inconsistent numbering and the subject matter of the first and fourth provisions are entirely unrelated. Additionally, without the preceding section in the addendum proffered by Plaintiff, the waiver of legal notice lacks context and is incomplete. It is only when the waiver provision is read in conjunction with the preceding section that its meaning is clear.

The arguments advanced by Defendant in their reply brief regarding the authenticity of the addendum are unpersuasive. Though the first and second page of the addendum produced by Plaintiff are dated November 7, 2008 in the bottom left corner, while the third page contains the date June 11, 2010, the same is true of the document produced by Defendant. (*Cf.* Doc. No. 43-3 at 136–138 *with* Doc. No. 38-3 at 34–35.) Moreover, as both parties produced the first and third pages of the addendum, the second page is the only portion of the addendum at issue, and it bears the same date as the first page. That the addendum produced by Defendants has an indication that it was faxed bears little relevance to whether the addendum signed by Plaintiff was actually two or three pages.

Lastly, the three-page addendum rendering any waiver of notice by Plaintiff void and unenforceable is consistent with Plaintiff's declaration and federal housing

protections. Plaintiff's declaration states that the Section 8 leasing addendum contained provisions consistent with the three-page addendum produced by Plaintiff. Similarly, 42 U.S.C. § 1437f(d)(1)(B)(i)–(v) provides that a tenant must be given written notice when a tenancy is terminated that includes the reason(s) for the termination. *Id.* (stating any termination of tenancy must be preceded by the owner's provision of written notice to the tenant specifying the grounds for such action). This consistency with federal housing protections is highly persuasive.

For these reasons, the Court sustains Plaintiff's objection to the Section 8 housing lease addendum proffered by Defendants. All of Plaintiff's remaining objections are overruled as moot. Defendants' objections are similarly overruled. With the parties' evidentiary objections assessed, the Court now considers the evidence offered in support of summary judgment.

> B.     Plaintiff Has Made a *Prima Facie* Showing of Housing Discrimination

Plaintiff asserts three claims for violation of the Fair Housing Act ("FHA"), California's Fair Employment and Housing Act ("FEHA"), and the Unruh Act on the basis of the same allegations. (*See* Doc. No. 15.) The provisions of FEHA and the Unruh Act require the same analysis as the FHA as these laws protect "substantially the same rights as the FHA." *See Cabrera v. Alvarez*, 977 F. Supp. 2d 969, 975 (N.D. Cal. 2013); *Walker v. City of Lakewood*, 272 F.3d 1114, 1131 n.8 (9th Cir. 2001). Thus, the Court will begin its analysis under the FHA.[1]

Pursuant to the FHA, 42 U.S.C. § 3604(b), a claim for discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services in connection therewith, because of race, color, religion, sex,

---

[1] *See Walker v. City of Lakewood*, 272 F.3d 1114, 1131, n.8 (9th Cir. 2001) ("Because we apply the same standards to FHA and FEHA claims, the *McDonnell Douglas* analysis applies to the FEHA claim as well.") (internal citation omitted).

familial status, or national origin" can be established through either disparate impact or disparate treatment theory. *Budnick v. Town of Carefree*, 518 F.3d 1109 (9th Cir. 2008); *Gamble v. City of Escondido*, 104 F.3d 300, 304–05 (9th Cir. 1997). In connection with Defendants' motion to dismiss, the Court concluded Plaintiff had not alleged a disparate impact claim, and could pursue his FHA claim only under a disparate treatment theory. (*See* Doc. No. 22 at 8) (noting Plaintiff had not alleged the application of any particular policy or practice resulting in an adverse effect to Plaintiff). Accordingly, Plaintiff has presented his claims of discrimination under a disparate treatment theory.

Disparate treatment claims are analyzed under the standards developed in connection with Title VII of the Civil Rights Act of 1964. *Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1180 n.11 (9th Cir. 1998); *Gamble*, 104 F.3d at 304–05. Courts employ a three part burden-shifting framework as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008). The three-part standard first requires a plaintiff to present a *prima facie* case of disparate treatment. *See Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999). If plaintiff establishes a *prima facie* case, the burden then shifts to defendants to demonstrate a legitimate, non-discriminatory reason for their actions. *Id.* The burden then reverts to plaintiff to show that defendants' proffered reason is pretextual. *Id.*

A plaintiff is able to make a showing of disparate treatment simply by providing evidence that a protected group has been subjected to explicitly differential or discriminatory treatment. *Cabrera v. Alvarez*, 977 F. Supp. 2d 969, 976 (N.D. Cal. 2013). Discriminatory intent or motive is a necessary element of any disparate treatment claim under the FHA. *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012); *Gamble*, 104 F.3d at 305. A *prima facie* case of disparate treatment requires a plaintiff to establish: (1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury. *Harris*, 183 F.3d at 1051. Establishing a *prima facie* case provides the plaintiff a presumption of discrimination. *Id.* When a plaintiff has provided direct and

circumstantial evidence of discriminatory intent, she has established a *prima facie* case of disparate treatment and may be able to survive a motion for summary judgment on that evidence alone. *Id.*; *Warren v. City of Carlsbad*, 58 F.3d 439, 442 n.1 (9th Cir. 1995).

The FHA not only demands that tenants be able to secure an apartment on a nondiscriminatory basis, but also "guarantees their right to equal treatment once they have become residents of that housing." *Id.* Eviction constitutes an adverse action under the FHA. *See Harris*, 183 F.3d at 1050–52 (*prima facie* claim established for purpose of summary judgment where tenants presented evidence of emotional distress due to feared eviction notices for informal complaints about racial comments); *see also Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364 (8th Cir. 2003) (threats of eviction are adverse action under FHA).

Considering the evidence offered in opposition to summary judgment, Plaintiff has established a *prima facie* case of discrimination under the FHA based on Mr. Thomas's alleged discriminatory statements. In addition to the directly discriminatory statements made by Mr. Thomas, Plaintiff has presented evidence that he was subjected to different terms and conditions than other tenants in light of the notices to vacate and unlawful detainer. *See Hous. Rights Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1192 (C.D. Cal. 2004) ("[Plaintiff] has presented sufficient evidence to suggest he may have been subjected to less favorable 'terms, conditions or privileges' with respect to the apartment or the eviction proceedings brought against him than other tenants based on his race.") Thus, Plaintiff has presented sufficient evidence to establish a *prima facie* clam of discrimination.

### C.  Genuine Issues of Material Fact Remain

#### 1.  *Housing Discrimination*

After a plaintiff has established a *prima facie* case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the action. *See McDonnell Douglas Corp.*, 411 U.S. at 802. To accomplish this, the defendant is only required to set forth a legally sufficient explanation. *Texas Dept. of Community Affairs v.*

*Burdine*, 450 U.S. 248, 255 (1981). Assuming the defendant can successfully rebut the presumption of discrimination, the burden shifts back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual. *Id.* at 255–56. A plaintiff may succeed in persuading the court that she has been a victim of intentional discrimination, "either directly by persuading the court that a discriminatory reason more likely motivated the [defendant] or indirectly by showing that the [defendant's] proffered explanation is unworthy of credence." *Id.* at 256. Notably, "[o]nce a *prima facie* case is established . . . summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a [discrimination claim] is the elusive factual question of intentional discrimination." *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985).

Defendants provide several explanations for the notices to cure and notices to vacate issued to Plaintiff in an attempt to demonstrate there are legitimate, non-discriminatory and non-pretextual reasons for each notice. First, Defendants contend that Plaintiff breached his lease by failing to pay rent. (Doc. No. 38-1 at 8.) Defendants also contend that Plaintiff breached his lease because other tenants complained about Plaintiff's behavior. (*Id.*) Next, Defendants contend that Ms. Hanassab was opting out of the Section 8 program and implementing a renovation plan, which led to the attempted termination of Plaintiff's tenancy. (*Id.*) Finally, Defendants argue that Plaintiff's schizophrenia distorts his perception and leads to paranoia, which explain Plaintiff's belief that he is the subject of discrimination. (*Id.* at 13–14.)

Assuming these explanations rebut the presumption of discrimination,[2] Plaintiff has raised general issues of material fact as to whether each explanation advanced by Defendants is pretextual. For example, it is unclear whether the failure of the San Diego Housing Commission to pay its portion of Plaintiff's rent may be imputed to Plaintiff as a

---

[2] Because the Court concludes genuine issues of material fact remain, the Court need not determine whether each offered explanation rebuts the presumption of discrimination.

breach of his lease. (*See* Doc. No. 43-3 at 78–80) (showing monthly payments made by and on behalf of Plaintiff); (Doc. No. 43-3 at 124) (listing amount of rent to be paid by Plaintiff and the amount paid each month by SDHC). Similarly, Plaintiff has presented evidence that his neighbors were the source of complaints, but that no action was taken by Defendants. (*See, e.g.*, Doc. No. 43-3 at 118) (complaint by Plaintiff regarding neighboring tenants and failure of management to take action); (Doc. No. 43-3 at 109) (letter from Plaintiff's neighbor apologizing for conduct). The deposition testimony of Rhoda Hu also suggests Plaintiff was subjected to different terms as Defendants' typical procedure for verifying complaints and issuance of notices to vacate were not followed with respect to Plaintiff. (*See* Doc. No. 43-3 at 44–46) (discussing procedure for investigating tenant complaints and general practices for issuing three-day notices to cure).

Additionally, Defendants have not presented any evidence to confirm their contention that Ms. Hanassab was in fact implementing a renovation plan that required Plaintiff to move out of the space. To the contrary, there is little evidence in the record to support the existence of Defendants' renovation plan that required Plaintiff to vacate his unit. (*Cf.* Doc. No. 43-3 at 24 *with* Doc. No. 43-3 at 182.) The same is true of Defendants' explanation regarding opting out of the Section 8 program. While Ms. Hanassab may have intended to opt out of the program, there is no evidence that any other Section 8 housing recipient at the Property was required to vacate. Instead, Plaintiff's lease and Section 8 housing addendum was renewed shortly thereafter, and Plaintiff still resides at the Property with the assistance of Section 8 housing. (*See* Doc. No. 43-3 at 184.)

Lastly, Plaintiff's schizophrenia diagnosis does not entitle Defendant to summary judgment. Although Defendants maintain the instances of discrimination did not occur, Defendants argument only establishes a disputed issue of material fact as to the existence of discriminatory conduct by Defendants and its agents, Mr. and Mrs. Thomas. Defendants present no legal or factual basis for granting summary judgment based on

1  Plaintiff's mental diagnoses. To the extent Defendants' arguments challenge Plaintiff's
2  credibility, such determinations are not appropriate for resolution in the context of the
3  present motion. *See Lowe v. City of Monrovia*, 775 F.2d 998, 1008 (9th Cir. 1985)
4  ("Issues of credibility, including questions of intent, should be left to the jury.").

5      For these reasons, the Court finds that, even assuming Defendants proffered
6  explanations rebut the presumption of discrimination, genuine issues of material fact
7  remain. Thus, summary judgment as to Plaintiff's FHA, FEHA, and Unruh ACT claims
8  is **DENIED**.[3]

9                    2.    *Punitive Damages*

10     Plaintiff seeks punitive damages in connection with his FHA, FEHA, and Unruh
11  Act claims. Defendants argue punitive damages are not appropriate because First Light
12  engaged in good faith efforts to comply with Title VII, and was not acting in reckless
13  disregard of federally protected rights. (Doc. No. 38-1 at 21.) Additionally, Defendants
14  contend Ms. Hanassab, as the owner of the Property, cannot be liable for punitive
15  damages because she did not authorize or ratify the acts of Mr. and Mrs. Thomas, she did
16  not employ Mr. Thomas, Mr. Thomas was not a managerial employee, and there were
17  written policies and training programs regarding anti-discrimination in place. (*Id.* at 22.)

18     Plaintiff contends that punitive damages are available under each of the applicable
19  statutes, and that Defendants have not provided any undisputed evidence demonstrating
20  Plaintiff is not entitled to punitive damages as a matter of law.

21     All three of the statutes under which Plaintiff's claims arise permit an award of
22  punitive damages in certain circumstances. *See* 42 U.S.C. § 3613(c)(1) (punitive damages

---

25  [3] The Court denies Defendants' motion for summary judgment as to the housing
26  discrimination claims with one exception. Plaintiff has presented no evidence to suggest
   that he was subjected to discrimination because of his status as a recovering alcoholic.
27  Accordingly, the Court **GRANTS** summary judgment only as to Plaintiff's status as a
28  recovering alcoholic.

recoverable under FHAA); *Commodore Home Systems, Inc. v. Superior Court*, 32 Cal. 3d 211, 220 (1982) (punitive damages recoverable under FEHA); *Botosan v. Fitzhugh*, 13 F. Supp. 2d 1047, 1052 (S.D. Cal. 1998) (punitive damages recoverable under the Unruh Act). A plaintiff seeking punitive damages in a fair housing case must establish that the defendants acted with "reckless or callous indifference" for the fair housing rights of others. *So. Cal. Hous. Rights Ctr. v. Krug*, 564 F. Supp. 2d 1138, 1153 (C.D. Cal. 2007). A finding of reckless indifference "ultimately focus[es] on the actor's state of mind," and requires that the defendant "at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). "[I]n general, intentional discrimination is enough to establish punitive damages liability." *Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1159–60 (C.D. Cal. 2001).

Defendants have provided no facts to suggest that, as a matter of law, Plaintiff is not entitled to punitive damages. Although the parties dispute whether Mr. Thomas was an agent of First Light and Ms. Hanassab's role, if any, in the allegedly discriminatory conduct, Plaintiff has produced evidence to suggest the alleged discrimination was intentional, and that Mr. Thomas was an agent of First Light and or Ms. Hanassab. Moreover, as Plaintiff has presented sufficient evidence to withstand summary judgment on its claims, it would be premature to foreclose Plaintiff's opportunity to seek punitive damages. *See Ellorin v. Applied Finishing, Inc.*, 996 F. Supp. 2d 1070, 1095 (W.D. Wash. 2014) (finding it premature to grant summary judgment as to punitive damages claim for factual disputes remained regarding the defendant's discriminatory conduct); *see also Blackfeet Tribe of Blackfeet Indian Reservation v. Blaze Const., Inc.*, 108 F. Supp. 2d 1122, 1146 (D. Mont. 2000) (similarly denying summary judgment as to punitive damages where underlying claim remained viable). Summary judgment as to Plaintiff's request for punitive damages is **DENIED**.

          D.     <u>Plaintiff's Claims Are Not Barred by the Statute of Limitations</u>

1    The Fair Housing Act provides that a plaintiff must file suit within two years after
2    "the occurrence or the termination of an alleged discriminatory housing practice." 42
3    U.S.C. § 3613(a)(1)(A). However, where a plaintiff "challenges not just one incident of
4    conduct violative of the Act, but an unlawful practice that continues into the limitation
5    period, the complaint is timely when it is filed within [two years] of the last asserted
6    occurrence of that practice." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–381
7    (1982). "Under the continuing violation doctrine, a plaintiff's complaint will not be time-
8    barred if the defendant's related wrongful acts continue into the statute of limitations time
9    frame. As a consequence, the statute of limitations only begins to run . . . upon the last act
10   in a series of related wrongful acts." *Silver State Fair Hous. Council, Inc. v. ERGS, Inc.*,
11   362 F. Supp. 2d 1218, 1221 (D. Nev. 2005).

12       Plaintiff filed suit in June 2014, and alleges that Defendants engaged in wrongful
13   conduct as early as 2011. Defendant contends Plaintiff's claims are barred by the two-
14   year statute of limitations. (Doc. No. 38-1 at 21.) Defendants maintain "there may have
15   been one or two discrete, vague and innocuous comments" that occurred two years prior
16   to the date Plaintiff filed suit, and that the continuing violations doctrine does not apply.
17   (*Id.*) In opposition, Plaintiff argues the continuing violation doctrine applies because
18   Plaintiff alleges a series of discriminating acts that culminated with the unlawful detainer
19   action, which was filed only three months prior to this action. (Doc. No. 43 at 24.)

20       The position advanced by Defendants is unsupported by the record. Although some
21   of the alleged discriminatory conduct, namely the comment directed at Plaintiff's
22   ethnicity, occurred more than two years before Plaintiff filed suit, the vast majority of the
23   alleged discriminatory acts occurred within the two-year limitations period. Specifically,
24   each of the allegedly wrongful notices to cure and notices to vacate fall within the
25   limitations period, as do several of the comments allegedly made by Mr. Thomas. Thus,
26   at best, only the comment by Mr. Thomas in the fall of 2011 regarding Plaintiff's
27   ethnicity falls outside of the limitations period, which would not warrant summary
28   judgment as to all of Plaintiff's claims.

16

1    Additionally, in the context of the present motion, Plaintiff has raised a genuine
2    issue of material fact as to whether the continuing violation doctrine applies. For a claim
3    to survive summary judgment after failing to satisfy the limitations period requirement, a
4    plaintiff must raise a genuine issue of material fact concerning (1) the existence of a
5    continuing violation and (2) whether the violation continued into the limitations period.
6    *See Morgan v. Nat'l R.R. Passenger Corp.*, 232 F.3d 1008, 1016 (9th Cir. 2000). A
7    plaintiff can establish a continuing violation "by showing a series of related acts one or
8    more of which are within the limitations period—a serial violation. A serial violation is
9    established if the evidence indicates that the alleged acts of discrimination occurring prior
10   to the limitations period are sufficiently related to those occurring within the limitations
11   period." *Id.* at 1015. At the summary judgment stage, as long as the conduct has the
12   capacity of being considered a violation, it becomes an issue for the finder of fact.
13   *Morgan v. National Railroad Passenger Corp.*, 232 F.3d 1008 (9th Cir. 2000) (holding
14   that district court erred in granting partial summary judgment as to conduct occurring
15   during an eight year period prior to the limitations period); *see also Anderson v. Reno*,
16   190 F.3d 930 (9th Cir. 1999) (reversing district court's grant of summary judgment in
17   favor of employer and holding that court erred in not considering events occurring during
18   a nine year period prior to the limitations period).

19   Here, although the first instances of discrimination are temporally distant, there
20   remains the potential for the violations to be considered related. This is sufficient to
21   defeat summary judgment. *Douglas v. California Dept. of Youth Auth.*, 271 F.3d 812, 824
22   (9th Cir. 2001) (noting "the critical inquiry is whether in this case, [plaintiff] has
23   introduced facts, which if viewed in the light most favorable to him, raise material
24   questions about whether he was 'exposed' to [defendant's] discriminatory policy during
25   the period of limitations."); *Sosa v. Hiraoka*, 920 F.2d 1451, 1455 (9th Cir. 1990). Thus,
26   summary judgment based on the statute of limitations is inappropriate.

27   **V.    CONCLUSION**

28

1         For the reasons detailed above, Defendants' motion for summary judgment is

2    **DENIED**.

3

4         **IT IS SO ORDERED**.

5    Dated:  August 29, 2016

6    Hon. Anthony J. Battaglia

7    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14cv1489 AJB (WVG)